E-FILED
Wednesday, 27 February, 2013  03:18:46 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| TERRI LYNN GRAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-cv-3435 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff Terri L. Graves appeals from the denial of her application for Social Security Disability Insurance Benefits ("Disability Benefits") under Title II of the Social Security Act. 42 U.S.C. §§ 416(i), 423. This appeal is brought pursuant to 42 U.S.C. §§ 405(g) . Graves has filed a Motion for Summary Judgment and Memorandum of Law (d/e 11), and Defendant Commissioner of Social Security has filed a Motion for Summary Affirmance (d/e13). The parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before this Court. Notice, Consent, and Reference of a Dispositive Motion to a Magistrate Judge entered November 20, 2012

(d/e 17).  For the reasons set forth below, the Decision of the

Commissioner is affirmed.

## STATEMENT OF FACTS

Graves was born on August  2, 1963.  She graduated from high

school in 1981.  Answer to Complaint (d/e 8), attached Certified Transcript

of Proceedings before the Social Security Administration (R.), at R. 53.

She previously worked as a hand packager, informal waitress,

telemarketer, and cashier.  R. 302-03.  She last worked in January 2008.

She filed for Disability Benefits on July 15, 2008.  She claimed that she

became disabled on March 1, 2008.  Graves suffers from type II diabetes

and related neuropathy, hypertension, degenerative disc disease,

fibromyalgia, carpal tunnel syndrome, obesity, depression and panic

disorder.

On April 10, 2007, Graves went to see Dr. Nichole Mirocha, O.D. at

Southern Illinois University Physicians and Surgeons (SIU) endocrinology

clinic for blood sugar management.  Dr. Mirocha also noted that Graves

was pregnant.  R. 436-38.  Graves reported to Dr. Mirocha that she had

gestational diabetes twenty years earlier with her first two children.  She

reported that she was diagnosed in 1994 with type 2 diabetes.  In January

2007, she became pregnant again.  Graves reported that she checked her

blood sugar only occasionally and "ate all day long" two days before her appointment because it was a holiday.  R. 436-38.[1]  Dr. Mirocha diagnosed diabetes type 2, pregnancy, hypertension, and obesity.  Dr. Mirocha prescribed a diet, regular blood sugar checks, and NPH and Novolog insulin in the morning and at night.  R. 437.

On September 6, 2007, Graves saw Dr. Allen G. Gerberding, M.D., at the Prairie Heart Institute in Springfield, Illinois, for hypertension.  Graves was 66 inches tall and weighed 256 pounds at the time of the examination. Dr. Gerberding reported that Graves gave birth thirteen days before the examination.  Dr. Gerberding stated that after giving birth, Graves was taken off insulin and put on a medication, metformin, for her diabetes. R. 484.   Dr. Gerberding diagnosed diabetes mellitus type 2, obesity, and severe hypertension.  R. 486.  Dr. Gerberding prescribed blood pressure medication and an endocrinology consult for the diabetes.  R. 486.

On October 27, 2007, Graves saw a resident, Dr. Sagun Gautam, M.D., at SIU.  Dr. Gautam stated that Graves had been put back on insulin because she "was not doing good on metformin."  R. 323.  Graves weighed 252 pounds at the time of the examination.  Graves reported swelling,

---

[1] Easter was April 8, 2007.

tingling and decreased sensation in both feet.  On examination, Dr. Gautam

noted that both feet were warm and there were no ulcers or erythema.

R. 323.  Dr. Gautam diagnosed her with diabetes type 2 and prescribed

insulin, blood sugar checks, diet, and exercise.  R. 323.  Dr. Romesh

Khardori, M.D., also examined Graves and concurred with Dr. Gautam's

diagnosis and treatment plan.  R. 323.

On March 12, 2008, Graves underwent an EMG evaluation ordered

by Dr. Gerberding.   Dr. Paul A. Smucker, M.D., performed the study.

Dr. Smucker noted that Graves reported numbness and intermittent severe

burning pain in her feet bilaterally.  The study indicated diffuse peripheral

neuropathy of a type commonly seen with diabetic neuropathy.  R. 471.

On June 9, 2008, Graves went to see an endocrinologist, Dr. Suzan

Gharaibeh, M.D., at SIU for follow up visit for diabetes management.

R. 317-18, 490.  Graves complained of numbness, tingling, and severe

pain in the lower extremities.  Graves weighed 256 pounds at this visit.

Dr. Gharaibeh changed Graves' insulin dosage and restarted the metformin

medication.  Dr. Gharaibeh counseled Graves for 30 minutes about lifestyle

modifications, including diet, exercise, weight loss, carbohydrate counting,

insulin to carbohydrate ratio, and blood sugar goals.  R. 317-18.

Dr. Gharaibeh stated in her notes that Graves had "suboptimal glycemic control."  R. 490.  Dr. Gharaibeh diagnosed diabetes mellitus type 2, peripheral neuropathy with chronic lower extremity pain, hypertension, and depression.  R. 318.

On July 9, 2008, Graves went to a rheumatologist, Dr. Sriya Ranatunga, M.D., at SIU for lower back pain.  R. 315-16.  Dr. Ranatunga noted painful range of motion on abduction in the right shoulder joint and diffuse tenderness in the lower back with increased lumbar lordosis. Dr. Ranatunga also noted some tender points.  Dr. Ranatunga assessed lower back pain likely due to degenerative disc disease and fibromyalgia. R. 316.

On July 10, 2008, Graves underwent an MRI of her lower back.  The MRI showed a mild herniation of disc material into the right neural foramen at the L5-S1 disc space level, no spinal stenosis, and a possible hemangioma into the right pedicle at L5.  R. 463.

On July 19, 2008, Graves went to the emergency room and underwent an X-ray of her left foot due to pain and swelling in the fourth digit of her left foot.  Her child had dropped something on her toe.  The impression was degenerative joint disease of the left foot with no evidence of trauma.  R. 458.

On July 29, 2008, Dr. Gharaibeh completed a diabetes report form for a state agency.  R. 497-500.  Dr. Gharaibeh also indicated that Graves had good compliance with her prescribed therapy.  R. 499.  One question on the form asked, "Please describe the patient's ability to do work-related activities such as sitting, standing, moving about, lifting, carrying, handling objects, hearing, speaking and traveling."  R. 499.  Dr. Gharaibeh responded, "Impaired abilities due to severe pain in the lower extremities and peripheral neuropathy."  R. 499.

On August 27, 2008, a state agency physician Dr. Joseph Kozma, M.D., performed an examination of Graves.  R. 545.  Dr. Kozma noted a body mass index of 40, tenderness of the lumbosacral junction, and of the sacroiliacs, and decreased superficial touch sensation in her feet. Dr. Kozma diagnosed chronic low back pain, chronic depression, morbid obesity, history of fibromyalgia, and diabetes mellitus type 2, insulin dependent.  R. 550.

On September 3, 2008, Dr. Marion Panepinto, M.D., reviewed Graves' medical records and performed a Residual Functional Capacity Assessment. Dr. Panepinto opined that Graves could lift twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours in an eight hour workday; and sit for six hours in an eight hour workday.

Dr. Panepinto opined that Graves's ability to push and pull with her lower extremities was limited.  Dr. Panepinto further opined that Graves was limited to occasional climbing and balancing, but could perform frequent stooping, kneeling, crouching, and crawling.  Dr. Panepinto also opined that Graves should avoid concentrated exposure to vibration.  R. 555-62.  In making this evaluation, Dr. Panepinto stated that he considered Dr. Gharaibeh's July 29, 2008, report.  He stated that Dr. Gharaibeh "does not give specific guidance on what is meant by 'impaired abilities' . . . ."  R. 561.  Dr. Panepinto, however, indicated that Dr. Gharaibeh's opinion, as a general statement, was consistent with Graves' medical records.  R. 561.

On September 15, 2008, Graves saw a resident, Dr. Melanie Zupancic, M.D., for diabetes.  R. 564.  Dr. Zupancic noted that Plaintiff's blood sugar levels were "somewhat incongruous" with her self-reported blood sugar readings.  R. 565.  Graves told Dr. Zupancic that she was educated about counting carbohydrates, but did not do so because it "was extremely difficult."  R. 564.  Dr. Zupancic told Graves that her neuropathy might improve if she tried to control her glycemic level.  R. 566.  Dr. Smita Gupta, M.D., also signed the medical records for this examination.  R. 566.

On October 20, 2008, Graves saw a dietician, Karen Sibert.  Sibert stated that Graves "would not be a good candidate for carbohydrate

counting" because she did not check her blood sugar and often forgot to take her insulin and medications.  R. 598.

On October 23, 2008, a state agency psychiatrist, Dr. Elizabeth Kuester, M.D., reviewed Graves medical records and performed a mental assessment on a psychiatric review form.  R. 577-94.  Dr. Kuester evaluated Graves for depressive disorders and anxiety related disorders. R. 580, 582.  Dr. Kuester opined that Graves' mental condition caused mild restrictions on activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and one or two episodes of decompensation.  R. 587.  Dr. Kuester opined that Graves could learn and consistently sustain adequate concentration to perform simple tasks.  R. 594.  Dr. Kuester opined that Graves could relate acceptably with others, but could not perform work that required dealing with the public.  R. 593.  Dr. Kuester further opined that Graves could make simple work decisions and adapt to a work routine. R. 593.

On March 2, 2009, Graves saw a surgeon, Dr. Osarentin Idusuyi, M.D., at SIU for bilateral foot pain.  The report indicated poor sugar control, and decreased sensation at the toe tips.  R. 670-71.  The diagnosis was

bilateral foot pain caused by diabetic neuropathy.  Dr. Idusuyi did not recommend surgery at the time.  R. 671.

On July 7, 2010, the Administrative Law Judge (ALJ) conducted an evidentiary hearing by videoconference.  R. 48-77.  Graves and her attorney appeared in Springfield, Illinois.  The ALJ presided in Peoria, Illinois.  A vocational expert James Lanier appeared in Peoria, Illinois.

Graves testified first at the hearing.  Graves testified that she was 5 feet 6 inches tall and weighed 261 pounds.  Graves testified that she was married and had four children, ages 24, 20, 5, and 2.  She lived with her husband, her 5 year old and her 2 year old.  R. 52.

Graves testified that she last worked in January 2008 as a cashier at a convenience store.  She was fired due to a disagreement with her manager.  R. 54.  Before that, she worked as a cashier and stocker.  She testified that before that job, she had worked as a cashier and stocker, an office manager, a marketer for seamless guttering, and a machine operator.  R. 55.

Graves testified that the main problem that kept her from working was a herniated disc in her back.  She testified that she cannot walk, stand or sit for very long because of her back.  She also testified that she is fatigued because she cannot get enough sleep due to her back.  R. 56.  She also

testified that she had periodic pain from fibromyalgia.  R. 56.  She testified that the pain could be anywhere in her body.  R. 65.  She also testified that she had neuropathy that causes severe pain in her feet.  R. 56-57.  Graves testified that she is depressed and has panic attacks.  R. 58.  Graves testified that she gets panic attacks a couple of times a week.  R. 67.

Graves testified that she was getting better at controlling her diabetes.  She testified that her diabetes medication helped.  R. 57.

Graves testified that she usually gets up when her husband goes to work at 7:30 a.m., but then usually returns to sleep until 10:00 a.m. or 11:00 a.m.  Graves husband returns from work at about 5:30 p.m.  Graves testified that she watches her two small children during the day.  Graves does housework and dishes a little bit at a time, typically during television commercials.  She testified that she does laundry.  R. 58-59.  She shops for groceries with her husband.  R. 60.  Graves testified that she walks in an outdoor swimming pool at her home for exercise when the weather permits.  R. 59-60.  Graves' 24 year old daughter visits every day with Graves' granddaughter.  R 61.  She also watches television during the day and reads at night when she cannot sleep.  R. 60.  She also plays games on the computer.  R. 63.

Graves testified that she rarely drives and never out of town.  Graves

cuts the grass at the house occasionally.  She uses a riding mower to cut

the grass and she stops and takes breaks while mowing.  R. 62.  Graves

testified that she takes care of her personal hygiene.  R. 63.  She testified

that she sometimes has trouble with zippers and buttons because of

cramps in her hands.  She testified that her right hand sometimes goes

numb.  R. 66.

Graves testified that in April 2009, she went to Florida for ten days

with her family.  She traveled by car.  R. 63-64.  Also in 2009, Graves drove

to Iowa two times on weekends to see her husband.  He was working in

Iowa at the time.  Once she drove by herself.  The other time she drove

with the wife of her husband's co-worker.  R. 64-65.

The vocational expert Lanier then testified.  The ALJ asked the

vocational expert to consider a person with Graves' age, education, and

work experience who was limited to light or sedentary work with no

climbing ladders, scaffolds; no work at unprotected heights; no over the

shoulder work; only jobs that did not require "complex or detailed thought

processes, little in the way of change in the job process from day to day."

R. 69.  Lanier opined that such a person could not perform Graves' past

relevant work.  Lanier, however, testified that such a person could perform

the light work jobs of collator operator (3,600 such jobs in Illinois and

51,000 nationally), routing clerk (1,700 such jobs in Illinois and 112,000

nationally), and mail clerk 1,200 such jobs in Illinois, and 32,000 nationally).

Lanier opined that such a person could perform the sedentary jobs of

surveillance system monitor (1,500 in Illinois, and 19,500 nationally);

document preparer (1,300 in Illinois, and 32,000 nationally); and assessor

(1,100 in Illinois, and 83,000 nationally).  R. 69-70.[2]  Lanier further testified

that all of these jobs allowed a sit/stand option for the person performing

the job.  R. 70.  Lanier further testified that the sedentary jobs listed would

not require much walking.  R. 70-71.

   At the end of the hearing, Graves' attorney asked for the opportunity

to submit more medical records.  The ALJ set the matter for a supplemental

hearing on July 21, 2010, to allow Graves' counsel to submit the additional

evidence.  R. 77.

   The supplemental hearing, however, was not held until January 25,

2011, in Springfield, Illinois.  Graves appeared with her attorney.

Vocational expert Mr. Hammond also appeared.  R. 33.  Graves submitted

additional documentary evidence which the ALJ accepted into the record.

R. 34-39.  Graves clarified some of her prior work experience.  R. 43.  In

---

[2] The numbers in parentheses are the vocational experts' opinions of the numbers of jobs available.

particular, she clarified that she set appointments for installation of gutters in the job with the seamless gutter company.  R. 42.

The ALJ then posed the same hypothetical question to Hammond that she posed to Lanier in the previous hearing.  Hammond opined that the person could perform Graves' prior work as an appointment setter, but no other prior work.  R. 44.  Hammond further opined that the person could perform the job of usher or ticket taker (5,000 in Illinois); fast food cashier (20,000 in Illinois); small products bench assembly (3,000 available in Illinois); pharmaceutical sealer (4,000 in Illinois); eyewear assembler and polisher (5,000 in Illinois); and combination positions in the area of telephone clerk, information clerk, and document preparer (5,000 in Illinois).  R. 45.  Hammond opined that all of the sedentary jobs would allow the person to sit or stand at will except the document preparer and bench assembler positions.  R. 45.  Hammond opined that only the usher and ticket taker position would require extended walking or standing.  R. 46.

## DECISION OF THE ALJ

The ALJ issued her decision on February 10, 2011.  R. 11-27.  The ALJ followed the five-step analysis set forth in Social Security Administration Regulations (Analysis).  20 C.F.R. §§ 404.1520, 416.920.

Step 1 requires that the claimant not be currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c).  If true, Step 3 requires a determination of whether the claimant is so severely impaired that she is disabled regardless of the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).  To meet this requirement at Step 3, the claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the claimant not to be able to return to her prior work considering her age, education, work experience, and Residual Functional Capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant cannot return to her prior work, then Step 5 requires a determination of whether the claimant is disabled considering her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f).  The claimant has the burden of presenting evidence and proving the issues on the first four steps.  The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy.

Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005); Knight
v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

The ALJ found that Graves met her burden at Steps 1 and 2.  She
was not engaged in substantial gainful activities and she suffered from the
severe impairments of diabetes mellitus type 2, neuropathy, degenerative
disc disease, pain from fibromyalgia, carpal tunnel syndrome, obesity,
depression, and panic attacks.  R. 13.  At Step 3, the ALJ determined that
none of the impairments were severe enough, either alone or in
combination with Graves' other conditions, to meet or equal a Listing.
R. 14-15.

At Step 4, the ALJ determined that Graves had the RFC to perform
light and sedentary work subject to further limitations of no climbing
ladders, ropes or scaffolds; no work at unprotected heights; no over the
shoulder work; no work that requires complex or detailed job processes;
and only work that has "little in the way of change in the job process day to
day."  R. 16.  In making this finding, the ALJ did not give controlling weight
to Dr. Gharaibeh's July 29, 2008, diabetes report.  R. 18.  The ALJ found
that the statement in the report that Graves was in good compliance with
her diabetes therapy was inconsistent with Dr. Gharaibeh's treatment notes
and other evidence in the record that indicated that Graves had poor

control of her diabetes.  The ALJ further stated that Dr. Gharaibeh "did not

link any particular symptoms that would prevent any particular work related

activity; . . . ."  R. 18.  The ALJ found that the RFC that she determined

accounts for the effects of Graves' impairments on her functional capacity.

    The ALJ also discounted the credibility of Graves' testimony

regarding the debilitating nature of her impairments in reaching her RFC

finding.  The ALJ stated,

> [T]he evidence reveals that Ms. Graves is able to lead an active life style despite her problems.  She lives with her husband and two young children.  She provides care for her 6-year-old and 3-year- old children, performs household chores, drives a motor vehicle, reads novels, watches television, uses a computer, mows the lawn, etc.  Ms. Graves stated that she is independent with her personal care.  Ms. Graves testified that she went on a family vacation to Florida for 10 days in April 2010.  She drove to Iowa to see her husband when he was working out of town in 2010.  These activities indicate that the claimant is able to sit, stand, walk, lift light items, and otherwise perform work like activity, she has not demonstrated with credible evidence that she would be unable to sustain such activity in order to perform full time work.  Ms. Graves' actual activities demonstrate no more than mild limitations related to activities of daily living or social functioning.  She has demonstrated no more than moderate limitations regarding maintaining concentration, persistence or pace, and this gives her the benefit of all reasonable doubt for time when she has exacerbation of her depression and anxiety/panic.  The claimant has not demonstrated that her subjective degree of limitation and pain are consistent with the claimant's reported activities or the objective medical record.

R. 24-25.  Based on the RFC and the opinions of the vocational experts, the ALJ found that Graves could not perform her past relevant work.  R. 25.

At Step 5, the ALJ found that Graves could perform a substantial number of jobs that exist in the national economy.  The ALJ relied on the RFC determination and the testimony of the vocational experts.  R. 26. The ALJ, therefore, concluded that Graves was not disabled.

Graves appealed.  The Appeals Council denied Graves' request for review on October 21, 2011.  The ALJ's decision thereby became the decision of the Commissioner.  Graves then filed this action for judicial review.

## ANALYSIS

This Court reviews the Decision of the Commissioner to determine whether it is supported by substantial evidence.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the findings if they are supported by substantial evidence, and may not substitute its judgment.  Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).  This Court will not review the credibility determinations of the ALJ unless the determinations lack any explanation or support in the record.  Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir.

2008).  The ALJ must articulate at least minimally his analysis of all relevant evidence.  Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ must "build an accurate and logical bridge from the evidence to his conclusion."  Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ's decision is supported by substantial evidence.  Graves does not challenge the ALJ's determinations at Steps 1-3.  The ALJ's RFC finding at Step 4 is supported by the evaluations of Dr. Kozma and the functional capacity assessment of Dr. Panepinto.  Dr. Panepinto specifically considered Dr. Gharaibeh's report in making his assessments.  The ALJ's finding at Step 4 that Graves could not perform her past work was supported by the vocational experts' testimony.  The vocational experts' testimony also supports the ALJ's findings at Step 5 that Graves could perform a substantial number of jobs that exist in the national economy. The ALJ's conclusion, therefore, should be affirmed.

Graves argues that the ALJ erred by not giving controlling weight to the opinion on Graves' treating physician Dr. Gharaibeh.  A treating physician's medical opinion is entitled to controlling weight when it is well supported by medically acceptable clinical and diagnostic techniques and is reasonably consistent with the other substantial evidence in the record.

20 C.F.R. § 404.1527(d)(2); SSR 96-2p.  The ALJ, however, "need not accept the opinion of a physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  Thomas v. Barnhart, 278 F.3d 947, 957 (7th Cir. 2002).

In this case, the ALJ did not err in refusing to give Dr. Gharaibeh's opinion controlling weight because that opinion was brief, conclusory, and vague.  The ALJ properly noted that Dr. Gharaibeh "did not link any particular symptoms that would prevent any particular work related activity; . . . ."  R. 18.  The report form completed by Dr. Gharaibeh asked her to describe Graves' "ability to do work-related activities, such as sitting, standing, moving about, lifting, carrying, handling objects, hearing, speaking and travelling."  R. 499.  Dr. Gharaibeh did not identify the effects of Graves' conditions on any work-related activities.  Dr. Gharaibeh only said that Graves had "impaired abilities" due to pain and peripheral neuropathy.  R. 499.  Dr. Gharaibeh did not opine as to the degree of Graves' impairments or the effect of those impairments on her ability to perform any work-related activity.  Given the lack of specificity, the ALJ did not err in declining to give the opinion controlling weight.[3]

---

[3] Dr. Panepinto also considered Dr. Gharaibeh's report in making his functional capacity assessment. Dr. Panepinto's opinion, therefore, supports the conclusion that the ALJ's RFC that limited Graves to certain light and sedentary jobs is consistent with Dr. Gharaibeh's general statement that Graves had "impaired abilities."

Graves argues that the ALJ erred in making her credibility finding. This Court will not review the credibility determinations of the ALJ unless the determinations lack any explanation or support in the record. Elder v. Astrue, 529 F.3d at 413-14. The ALJ explained the basis of her credibility finding and support for that finding exists in the record. The ALJ relied on Graves' daily activities taking care of two small children and also her trips to Florida and Iowa as evidence that she can engage in work related activities of sitting, standing, walking, carrying consistent with the RFC. R. 24-25. The ALJ also referenced medical evidence that supported the RFC. The medical evidence and Graves' ability to drive to Iowa and sit in a car long enough to travel to Florida provides support in the record for the ALJ's credibility finding.

Graves argues that the ALJ erred in stating that Graves, "appeared[ed] unwilling to follow her doctor's advice to watch her diet and lose weight." Motion, at 6 (quoting the ALJ's decision at R. 19). The Court finds any error in this statement to be harmless. The ALJ's findings and conclusions were supported by substantial evidence as discussed above. The statement was not material to the decision.

Graves last argues that the ALJ erred in not mentioning a Functional Report –Adult Third Party form completed on August 12, 2008, by Graves'

husband David P. Graves.  R. 244-50.   The ALJ did not err in omitting a discussion of Mr. Graves' report.  The ALJ is not required to "evaluate in writing every piece of testimony and evidence submitted" by a claimant. Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993).  Mr. Graves' statements were largely consistent with Graves' testimony regarding her daily activities and impairments.  The ALJ addressed these matters thoroughly in discussing her testimony.  The Court sees no error.

WHEREFORE the Defendant Commissioner's Motion for Summary Affirmance (d/e13) is ALLOWED, and the Plaintiff's Motion for Summary Judgment and Memorandum of Law (d/e 11) is DENIED.  Judgment is entered in favor of the Defendant Commissioner and against the Plaintiff. The decision of the Commissioner is AFFIRMED.  THIS CASE IS CLOSED.

ENTER:    February 27, 2013


_____*s/ Byron G. Cudmore*_____
UNITED STATES MAGISTRATE JUDGE